In re Sylvia Bryan OUTLAW, Debtor.

Ronald C. SUMMERLIN, Plaintiff,

v.

Sylvia Bryan OUTLAW, Defendant.

Bankruptcy No. S–85–01666–5.

Adv. No. S–86–0069–AP.

United States Bankruptcy Court,
E.D. North Carolina.

Oct. 10, 1986.

414

David Lennon, Raleigh, N.C., for debtor/defendant.

Ronald C. Summerlin, pro se.

## MEMORANDUM OPINION

A. THOMAS SMALL, Bankruptcy Judge.

This adversary proceeding was brought by Ronald C. Summerlin objecting to the

debtor's discharge under 11 U.S.C. § 727(a)(4)(A). The debtor, Sylvia Bryan Outlaw, filed a counterclaim alleging that Mr. Summerlin violated the automatic stay of 11 U.S.C. § 362(a). Mrs. Outlaw also asked that the court award attorney's fees to compensate her for having to defend the plaintiff's complaint. The trial was held in Raleigh, North Carolina, on September 30, 1986. Although the plaintiff's complaint was filed by counsel, Mr. Summerlin appeared at the trial *pro se.*

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A), and (J), which this court may hear and determine.

## FACTS

Sylvia Bryan Outlaw filed a voluntary petition under chapter 7 of the Bankruptcy Code on October 1, 1985. In her petition she listed the following assets:

| ASSET | VALUE |
|---|---|
| Cash | $2.00 |
| State Employees Credit Union Account | 25.00 |
| Furniture, small appliances at residence | 1,025.00 |
| Pictures at residence | 150.00 |
| Personal clothing | 400.00 |
| 1977 AMC Gremlin | 500.00 |
| Miniature poodle | 50.00 |
| | $2,152.00 |

The debtor claimed all of her personal property as exempt on Schedule B-4. The automobile was claimed as exempt under N.C.Gen.Stat. § 1C–1601(a)(3) and the re-

maining property with a value of $2,225 [1] was claimed as exempt under N.C.Gen. Stat. § 1C–1601(a)(4).

The debtor's schedules reflect only one secured debt—$1,350 owed to the State Employees Credit Union secured by the Gremlin valued at $500. The unsecured debts total $15,131.37. [2]

The debtor's schedule of current income and current expenses shows monthly take home pay of $985 plus $200 per month child support. Mrs. Outlaw's monthly expenses, which are not unreasonable, are listed as being $1,191.40.

Mrs. Outlaw's statement of financial affairs indicates that she has a job as a clerk typist and that she also works as a waitress. On her statement of financial affairs, the debtor answered "None" to question 4(a) which, among other things, asks what bank accounts the debtor had in the past two years. In response to question 5(a) asking if she had books and records for the previous two years, she answered "Yes —checkbook and copies of tax returns."

On November 19, 1985, the bankruptcy trustee filed a report of no distribution and the case was administered as a "no-asset" case.

Mr. Summerlin's complaint alleges that Mrs. Outlaw made false statements in the schedules she filed with the court. Specifically, the plaintiff alleges that the debtor's current income was understated, that refundable deposits were omitted from the schedules, that the debtor's wearing apparel and personal possessions were undervalued, and that the debtor failed to list a bank account she had within two years of the petition.

After considering all the evidence, including the case file of which the court took judicial notice, the court finds that there is no merit to any of the allegations.

---

**1.** The value of the personal property is shown on Schedule B-2 as $2,152.00, including the automobile valued at $500. The values of the items of personal property listed on Schedule B-4, excluding the automobile, total $2,225 (although the amount claimed as exempt is the maximum $3,000).

**2.** Schedule A-3 most likely overstates the unsecured claims because a debt listed to Mr. Summerlin in the amount of $5,750 appears to be duplicative of a debt listed for a $5,000 loan from United Carolina Bank for which Mr. Summerlin was a co-signer.

■ The plaintiff has offered no credible evidence to show that Mrs. Outlaw understated her income. Mrs. Outlaw testified that she works for the State of North Carolina as a clerk typist and also works two other jobs at nights and weekends as a waitress. At trial, Mr. Summerlin insinuated that Mrs. Outlaw earned extra income as a "call girl" and testified that he had paid her for sexual relations. Another witness, Donald Sullivan, testified that in early 1985 he had, on two occasions, paid the debtor for sex. Mrs. Outlaw vehemently and convincingly denied these allegations and the court finds them to be untrue. But, even if true, the allegations refer to activities well before the date of the petition and do not show that the debtor's statement of income as of October 1, 1985, was incorrect.

■ It is true that Mrs. Outlaw did not list on her schedules certain deposits that she had made. In the answer to the complaint, the debtor acknowledges that she made a security deposit on her apartment (alleged by Mr. Summerlin to be for $440), a $50 non-refundable pet deposit, a non-refundable telephone service connection fee of $40, an electric deposit of $150, a cable tv deposit of $15, and a water deposit of $14. The court finds that these deposits are either non-refundable or are not available to the debtor's estate as long as the debtor is utilizing the services or renting the property for which the deposits were given. But, even if *all* of the deposits were available, the debtor could claim them *all* as exempt.

There is absolutely no convincing evidence before the court to suggest that the debtor's personal property was undervalued on her schedules and the court finds that the debtor's schedule of personal property, including the value of the property, is correct.

■ The debtor readily admits that she failed to list in her statement of financial affairs a checking account that she had with a bank within two years of filing the petition. Mrs. Outlaw's explanation is that the omission was inadvertent and not inten-

tional. The account typically had only a nominal balance with the exception of a deposit made from proceeds of a $5,000 loan which the debtor (and Mr. Summerlin as co-signer) received from United Carolina Bank. The funds were disbursed to pay debts and to pay the debtor's moving costs from Kenansville to Raleigh. The court accepts Mrs. Outlaw's explanation. Had she intentionally omitted the bank account, she would not have referred to the "checkbook" in answer to question 5(a) on her statement of financial affairs. The omission was unintentional and inconsequential.

--------

■ In her counterclaim, Mrs. Outlaw alleges that one evening between the meeting of creditors (November 14, 1985) and the date set for the discharge hearing (January 21, 1986), Mr. Summerlin violated the automatic stay of 11 U.S.C. § 362(a) by coming to her home, scaring her son who was there alone, and remaining in a parked car outside of her home for several hours until approximately 5:00 or 6:00 a.m. Mrs. Outlaw, however, testified with great certainty that Mr. Summerlin on the occasion of this late night visit did not mention the debt or try to collect his claim. Based on that testimony, the court finds that Mr. Summerlin's post-bankruptcy trip to the debtor's residence did not constitute an act to collect or recover a claim against the debtor, and therefore was not a violation of the stay.

■ The court does find, however, that a second postpetition incident—the execution on Mr. Summerlin's judgment by the Sheriff of Wake County, North Carolina—does constitute an effort by Mr. Summerlin to collect a prepetition claim.

On June 17, 1985, Mr. Summerlin obtained a default judgment against Mrs. Outlaw in Duplin County, North Carolina, for $5,750 plus interest, plus attorney's fees of $862.50. In September, 1985, execution on the judgment was requested by Mr. Summerlin who paid $19.00 in execution costs. On December 11, 1985, a depu-

ty from the Wake County Sheriff's Department served the order of execution by personally demanding that Mrs. Outlaw pay the judgment.

There is no doubt that Mr. Summerlin had notice of the debtor's bankruptcy (*see* Reply to Defendant's Request for Admissions #2 and #3), or that he had this notice well before the sheriff's execution on the judgment. It is also admitted that prior to the filing of the bankruptcy petition on October 1, 1985, Mr. Summerlin had requested that the Wake County Sheriff's Department execute on the money judgment (Reply to Defendant's Request for Admissions #7). It is also not disputed that, after hearing of the debtor's bankruptcy, Mr. Summerlin did nothing to notify the Sheriff's Department of Mrs. Outlaw's bankruptcy or to stop the Sheriff's Department from carrying out the execution. Essentially, Mr. Summerlin takes the position that stopping the sheriff from executing was not his responsibility and that he thought the sheriff would be notified by the bankruptcy court. The court, however, does not find Mr. Summerlin's explanation to be credible in view of his conduct in this proceeding, and finds that Mr. Summerlin's failure to notify the sheriff to stop the execution process once Mr. Summerlin learned of the filing of the bankruptcy petition constitutes a willful violation of the automatic stay (§ 362(a)(6)).

-------

Mrs. Outlaw contends that she has been damaged by the plaintiff's lawsuit and maintains that she should recover from Mr. Summerlin her costs and attorney's fees in defending the objection to discharge. The debtor says that she incurred attorney's fees in defense of the adversary proceeding of at least $1,638.00 (18.20 hours × $90 per hour), an amount which does not include charges for the trial of the case.

The court finds that the plaintiff's allegations that the debtor undervalued her income and assets had absolutely no merit. The remaining allegations that the debtor had failed to list her prior bank account and that she had omitted security deposits

were true, but were fully explained in the debtor's answer. After that explanation, and after the pre-trial conference of July 23, 1986, at which these issues were fully discussed, Mr. Summerlin should have had no doubt that his case had no merit unless he could produce additional evidence to support his broad allegation that Mrs. Outlaw had made false statements in her schedules. Mr. Summerlin offered no such evidence at trial and the court finds that Mr. Summerlin's continued prosecution of the case after the pre-trial conference was not carried out in good faith, but as an attempt to harrass the debtor in the hope that she would agree to pay Mr. Summerlin's claim. As further evidence supporting that finding, the court notes that on two occasions during the trial, Mr. Summerlin offered to drop his suit if Mrs. Outlaw agreed to reaffirm his claim.

The court finds that a reasonable fee for preparing for and conducting the defense of this proceeding (the legal fees incurred after the pre-trial conference) is $400. The court also finds that a reasonable fee for redressing Mr. Summerlin's violation of the automatic stay is $200. In finding the fee to be only $200, the court notes that the debtor seemed to consider this part of her counterclaim to be less important than the other aspects of this proceeding. Adding the additional allegation of the stay violation and developing the necessary testimony involved only nominal extra work by counsel.

## DISCUSSION AND CONCLUSIONS

Section 727(a)(4)(A) of the Bankruptcy Code provides that a debtor is not entitled to a discharge if "the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account." The debtor did fail to list several security deposits, but these omissions were inadvertent and inconsequential. "The failure to schedule worthless property does not bar a discharge." *In re Usoskin*, 56 B.R. 805, 814 (Bankr.E.D.N.Y.1985). Likewise, the omission of the debtor's prior bank account on the statement of financial affairs was

an unintentional oversight of insignificant importance to the administration of the case.

The plaintiff has the burden of proof in a complaint objecting to discharge (Bankruptcy Rule 4005) and Mr. Summerlin has not met that burden in this proceeding. Accordingly, Mrs. Outlaw is entitled to receive her discharge and a judgment to that effect will be entered.

■ Mrs. Outlaw contends that she should be compensated for the legal fees she incurred in defending this adversary proceeding. Generally, the "American Rule" is that each party to a lawsuit must bear his own litigation expense. *In re Miller*, 14 B.R. 443, 447 (Bankr.E.D.N.Y.1981); *In re Scanlon*, 4 B.R. 197, 199 (Bankr.E.D. Pa.1980). Section 523(d) allows a debtor who prevails in a proceeding to determine the dischargeability of a consumer debt to recover reasonable attorney's fees if the position of the objecting creditor was not substantially justified, but that section does not apply to actions, like the present proceeding, objecting to the debtor's entire discharge under § 727. *In re Wolmer*, 57 B.R. 128, 132 (Bankr.N.D.Ill.1986).

Bankruptcy Rule 9011 and 28 U.S.C. § 1927, however, do apply and the award of attorney's fees is justified against Mr. Summerlin in this proceeding.

Bankruptcy Rule 9011, which tracks Rule 11 of the Federal Rules of Civil Procedure, states in pertinent part:

Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation.... If a document is signed in violation of this rule, the court on motion or its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

■ When a plaintiff pursues a section 727 objection to discharge without any reasonable hope of prevailing on the merits, it is appropriate to award the debtor his reasonable expenses and fees incurred in defending against the suit. *In re Barrup*, 53 B.R. 215, 221 (Bankr.D.Vt.1985). In *Barrup*, the court required the plaintiff to pay the debtor's attorney's fees when the plaintiff pursued the unsuccessful objection to discharge action even though he had not, as required by § 727(e)(1), filed the section 727 complaint within one year of the debtor's discharge.

In *In re Usoskin*, 56 B.R. 805, 817 (Bankr.E.D.N.Y.1985), attorney's fees were awarded, pursuant to Bankruptcy Rule 9011, in an unsuccessful § 727 action because the plaintiffs continued with their suit after having been told that, based on their original complaint, "they had no grounds for objecting to the defendant's discharge." As in this case, the plaintiffs in *Usoskin* made unsubstantiated allega-

tions that the debtor had concealed assets when she filed her chapter 7 bankruptcy petition. The only allegation with any evidentiary support was that debtor Usoskin failed to list several bank accounts in her bankruptcy petition with a total balance of less than $7.00. This failure to schedule virtually worthless property was held not to bar either a discharge or an award of attorney's fees to the debtor.

In the present case, Mr. Summerlin should have known after the pre-trial conference of July 23, 1986, that his case was without merit unless he was able to produce additional evidence showing that the debtor had made false statements in listing her income and assets. No such evidence was produced at trial. The court has found that the plaintiff's continued prosecution of this case after the July 23, 1986 pre-trial conference was not carried out in good faith, but was instead an attempt to pressure the debtor into agreeing to pay Mr. Summerlin's claim. Under these circumstances, Mr. Summerlin will be required to reimburse the debtor $400 for the reasonable legal fees incurred after the pre-trial conference for the debtor's defense in this section 727 action.[3]

The debtor is also entitled, pursuant to § 362(h), to an attorney fee award of $200 for the reasonable legal fees incurred in redressing Mr. Summerlin's violation of the automatic stay. Section 362(h) states:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Mr. Summerlin obtained a state court default judgment against Mrs. Outlaw on June 17, 1985, and in September of that year he formally requested execution on that judgment. These actions did not violate the stay because they occurred before the debtor filed her bankruptcy petition on

October 1, 1985. However, Mr. Summerlin did violate the stay when, after learning that Mrs. Outlaw had filed for bankruptcy, he did not notify the Wake County Sheriff's Department that they should not execute on his judgment against Mrs. Outlaw because of the pending bankruptcy. As a result, the debtor went through the distressing experience of having a deputy sheriff appear at her door demanding that she pay the state court judgment.

There is no merit to Mr. Summerlin's argument that it was not his responsibility to put a halt to the execution process which he had set in motion prior to the filing of the bankruptcy petition. Creditor inaction can be as disruptive to a debtor as affirmative collection efforts. *In re Miller,* 22 B.R. 479, 481 (D.Md.1982). In both *In re Pody,* 42 B.R. 570 (Bankr.N.D.Ala.1984) and *In re Elder,* 12 B.R. 491 (Bankr.M.D. Ga.1981), a creditor took steps to have the debtor's wages garnished prior to the debtor's filing of a bankruptcy petition. In each case, the court held that the creditor's failure to take the steps necessary to release the garnishment after the petition had been filed violated the stay and justified an award of attorney's fees for the expenses incurred in having the violation corrected.

In the present case, as in *Pody* and *Elder,* it was the responsibility of the creditor, not the debtor or the bankruptcy court, to do what needed to be done to prevent the stay from being violated. Once a creditor has knowledge of a debtor's bankruptcy, the burden is more appropriately placed on him, rather than on the debtor, to correctly ascertain the scope of the automatic stay. *In re Gibson,* 16 B.R. 682, 684 (Bankr.S.D.Ohio 1981); *In re Reed,* 11 B.R. 258, 274 (Bankr.D.Utah 1981). If a creditor is uncertain about the scope of the automatic stay, he takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court.

---

**3.** Mr. Summerlin's attorney withdrew from this case shortly after the July 23 pre-trial conference. Had he continued to represent Mr. Summerlin in this proceeding, he too could have been required to pay the debtor's attorney's fees pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927.

*In re Clark*, 49 B.R. 704, 707 (Bankr.D. Guam 1985); *In re Pody*, 42 B.R. at 573–574.

This court can understand Mr. Summerlin's frustration concerning this matter. He agreed to co-sign on a substantial loan to Mrs. Outlaw, a friend at the time. She subsequently filed for bankruptcy, leaving Mr. Summerlin wholly responsible for repaying the loan. This unhappy chain of events, however, does not justify a violation of the automatic stay or the pursuit of a meritless section 727 action in an attempt to pressure the debtor into agreeing to pay her prebankruptcy obligation to Mr. Summerlin.

An appropriate judgment shall be entered in accordance with this opinion.