**In re Floretta ARMSTRONG, SS # : 097–32–3778, Debtor.**

**Bankruptcy No. 88–02263–SO5.**

United States Bankruptcy Court,
E.D. North Carolina.

Feb. 10, 1989.

---

Donald A. Davis, Raleigh, N.C., for debtor.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the "Motion for Contempt, Sanctions and for Attorneys Fees" filed by the chapter 13 debtor on December 14, 1988. The basis of the debtor's motion is her allegation that Super Saver, which apparently functions like a credit union for American Airlines employees, failed to terminate a payroll deduction against the debtor after having been notified of the filing of the debtor's bankruptcy petition. A hearing on the debtor's motion was held in Raleigh, North Carolina, on February 2, 1989, which was attended by the debtor but not by any representative of Super Saver.

The relevant facts are relatively straightforward. The debtor, an employee of American Airlines, filed a petition for relief under chapter 13 of the Bankruptcy Code on October 3, 1988. At the time she filed her petition, the debtor owed money on a loan she had received from Super Saver which was being repaid through a payroll deduction every two weeks of $285.48.[1] Four written communications with respect to the debtor's bankruptcy which were sent to Super Saver were admitted into evidence: (1) a "Notice to Creditors" dated October 10, 1988, from the debtor's attorney which states that federal law prohibits the creditor from making any effort to collect on its debt as long as the debtor's plan remains in effect; (2) a notice of the bankruptcy filing and of the § 341 meeting date from the bankruptcy court, also dated October 10, 1988; (3) a letter to Super Saver from the debtor's attorney dated November 4, 1988, specifically requesting that the payroll deduction be stopped and that any postpetition payroll deductions which had already been made be forwarded to the chapter 13 trustee; and (4) a letter to Super Saver from the debtor's attorney dated November 21, 1988, again requesting that the payroll deduction be stopped and that the funds previously deducted be forwarded to the chapter 13 trustee. The debtor's attorney reported that Super Saver did not reply to any of these communications; furthermore, Super Saver has filed no formal response to the debtor's motion with the court.

The debtor testified that, after the filing of her bankruptcy petition, Super Saver continued to deduct $285.48 from her pay check every two weeks until the last pay check she received prior to the hearing on February 2nd when Super Saver finally terminated the payroll deduction. It was stated at the hearing held in February that Super Saver had withheld money for nine postpetition pay periods, but counsel for the debtor has subsequently informed the court that the correct figure is eight pay

---

1. The debtor's schedule of debts lists an unsecured, undisputed debt to Super Saver for $3,550, although the debtor indicated at the

hearing that the loan was secured by her pension.

periods for a total of $2,283.84 withheld (8 × $285.48 = $2,283.84). The debtor testified that she telephoned Super Saver several days before the hearing requesting the return of the deducted money and was told that Super Saver would make a decision on that later in the week. The debtor testified that, because she was also making plan payments to the chapter 13 trustee, the failure of Super Saver to terminate its payroll deduction caused her great financial hardship and that she had been unable to pay her rent. The debtor seeks the return of the funds withheld postpetition by Super Saver, the payment of her attorney fees, and the imposition of sanctions because of Super Saver's failure to promptly terminate the payroll deduction.

■ The automatic stay of 11 U.S.C. § 362(a), which comes into effect upon the filing of a bankruptcy petition and prohibits any act to collect prepetition debts from the debtor, is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from her creditors and permits the debtor to attempt a repayment or reorganization plan. *See Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir. 1986). Section 362(h) of the Bankruptcy Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." It has been held that a violation of the automatic stay is willful where the creditor knows of the debtor's bankruptcy and intentionally engages in acts later found to violate the stay. *In re Inslaw, Inc.*, 83 B.R. 89, 165 (Bankr.D.D.C.1988). If a creditor is uncertain about the scope of the automatic stay, he takes the risk of being assessed for damages if he fails to obtain clarification from the bankruptcy court. *In re Outlaw*, 66 B.R. 413, 419 (Bankr.E.D.N.C. 1986). A creditor's failure to terminate a wage garnishment which had been instituted prepetition after the creditor subsequently learned of the debtor's bankruptcy filing has been held to be a violation of the automatic stay. *Id.*

■ In the present case, Super Saver willfully violated the automatic stay when it failed to terminate the payroll deduction from the debtor's wages despite repeated requests by the debtor to do so. To compensate the debtor for her actual damages resulting from this violation, as mandated by § 362(h), Super Saver will be required to release the funds deducted postpetition and to pay the debtor's attorney fees incurred in seeking a return of those funds and a termination of the payroll deduction. The debtor's attorney reports that those fees are $300; the court finds this amount to be reasonable. The court also believes that punitive damages are appropriate in this case in view of the hardship suffered by the debtor and in view of Super Saver's cavalier approach to this matter. It should not have taken Super Saver over two months to terminate the payroll deduction after having been notified of the debtor's bankruptcy filing and having been specifically requested to terminate that deduction. No justification has been offered for Super Saver's failure to promptly respond to the debtor's attorney's requests that the payroll deduction be terminated. Super Saver failed to return the funds it had deducted from the debtor's wages when she specifically asked for their return—Super Saver was so unconcerned it failed to respond to the debtor's motion and failed to attend the hearing. The court does not regard stay violations so lightly and will assess punitive damages of $2,283.84, the amount of the wages which Super Saver has caused to be withheld from the debtor postpetition. *See In re Depew*, 51 B.R. 1010 (Bankr.E.D. Tenn.1985), in which the creditor was required to pay $250 in attorney fees and $1,000 in punitive damages for repossessing the debtor's automobile after having been notified of the debtor's bankruptcy filing.

Super Saver is directed to pay within ten (10) days from the date of entry of this order $2,283.84 to the trustee in the debtor's chapter 13 case, Trawick H. Stubbs, Jr., P.O. Drawer 1654, New Bern, N.C. 28560, who shall, after deducting any sums necessary to bring the debtor current on

her chapter 13 plan,[2] turn the remainder of the funds over to the debtor. Super Saver is further directed to pay directly to the debtor within ten (10) days from the date of entry of this order the sum of $300 for attorney fees and the sum of $2,283.84 for punitive damages.

SO ORDERED.

---

**2.** At the time of the hearing on February 2, 1989, the debtor was either $400 or $600 in arrears on her plan payments; this delinquency is understandable in view of the large sums being deducted from the debtor's wages by Super Saver.