**In re Lander PETERKIN, SS#: 248–78–0343, Mary R. Peterkin, SS#: 246–82–2454, d/b/a L. Peterkin & Son Concrete Finishing, Debtors.**

**Bankruptcy No. 89–01040–S03.**

United States Bankruptcy Court,
E.D. North Carolina.

July 24, 1989.

---

Stephen G. Inman, Fayetteville, N.C., for debtors.

Richard M. Stearns, Kinston, N.C., for trustee.

James A. Haney, Raleigh, N.C., for Employment Sec. Com'n of North Carolina.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the debtors' motion for damages pursuant to 11 U.S.C. § 362(h), requesting an award of $720 in attorney's fees incurred as a result of the North Carolina Employment Security Commission's willful violation of 11 U.S.C. § 362. After proper notice, a hearing was held in Raleigh, North Carolina, on July 13, 1989.

### JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2), which this court may hear and determine.

### FACTS

The essential facts are not in dispute. On August 9, 1988, the Superior Court of Hoke County, North Carolina, enjoined Lander Peterkin, one of the debtors in this case, trading as Peterkin & Son Concrete Finishing ("Mr. Peterkin") from hiring and continuing to employ individuals until payment was made to the Employment Security Commission ("ESC") for employment taxes incurred during the company's operations during various quarters in the years 1984 through 1987. Contemporaneously, the superior court suspended enforcement of its order on the condition that Mr. Peterkin pay in full ensuing employment taxes as they became due and $300 per month, beginning in August of 1988, on the debt owed to ESC with respect to past-due employment taxes. The order also provided that, were Mr. Peterkin to fail to make those payments, suspension of the injunction would automatically terminate, again barring him from hiring or continuing to

employ individuals until the debt to ESC was satisfied. Mr. Peterkin made $300 payments in August, September, and October, 1988, but because of declining business thereafter did not make further payments. On March 23, 1989, ESC filed in the superior court a motion for an order to show cause why Mr. Peterkin should not be held in civil contempt. A show cause order was signed on April 17, and scheduled for hearing on May 18. On April 24, the debtors filed their petition for relief under chapter 13 of the Bankruptcy Code. On May 18, the hearing on the civil contempt proceeding was continued by agreement of counsel to July 10, but was not heard at that time, as the state court rescheduled pending matters. On June 5, the debtor filed his motion for damages pursuant to 11 U.S.C. § 362(h).

During the hearing in this court on July 13, Mr. Peterkin's counsel argued that ESC's underlying purpose in maintaining the civil contempt action against Mr. Peterkin has been to collect a prepetition debt, which action was automatically stayed by virtue of 11 U.S.C. §§ 362(a)(1) and (a)(6) of the Bankruptcy Code on April 24, when the chapter 13 petition was filed. Additionally, counsel contended that ESC's continued efforts to maintain the civil contempt proceedings, notwithstanding its knowledge that a chapter 13 petition had been filed, constitutes a willful violation of §§ 362(a)(1) and (a)(6), entitling Mr. Peterkin to recover damages, including attorney's fees incurred in filing this motion, pursuant to § 362(h).[1] While acknowledging that counsel for ESC has been cooperative throughout discussions of whether continuing to maintain the civil contempt proceedings in state court violates the automatic stay provision, and further acknowledging that ESC moved the state court for a continuance of the May 18 show cause hearing on civil contempt, Mr. Peterkin's counsel contended that, upon learning that

the bankruptcy petition had been filed, ESC was obligated to seek a dismissal of the civil contempt proceedings or to take the appropriate steps to obtain clarification from this court concerning the effect of the stay on those proceedings.

ESC argued that the state court proceedings are exempted from the automatic stay by virtue of §§ 362(b)(4) and (b)(5), because they constitute an action by a governmental unit to enforce its regulatory power for the protection of the public health, safety, and welfare. According to ESC, the statutory scheme set out in N.C.GEN.STAT. §§ 96-1 *et seq.*, which provides for the collection of funds to benefit certain unemployed individuals, was enacted to lessen economic insecurity; and, had ESC not initiated contempt proceedings against Mr. Peterkin, thereby allowing him to amass further debts, the general fund would have been damaged. Moreover, ESC argued that, even if it had violated the stay, its actions did not amount to a willful violation, as ESC had moved for a continuance of the state court proceedings and engaged in numerous conversations with Mr. Peterkin's counsel regarding how best to obtain clarification from this court as to the effect of the automatic stay. Counsel for ESC conceded, however, that, although it did not want to proceed with the contempt action without instruction from this court, based on his understanding of this court's decision in *In re Outlaw*, 66 B.R. 413 (Bankr.E.D.N.C.1986), that such action would present a calculated risk of being in contempt of court, no instruction was sought.[2]

After a review of the evidence, the court finds as a fact that ESC's maintenance of civil contempt proceedings against Mr. Peterkin was an effort to collect a prepetition debt. The court also specifically finds that ESC's efforts to collect the debt constitute a violation of the automatic stay provisions of §§ 362(a)(1) and (a)(6) and are not ex-

---

**1.** The motion for damages pursuant to 11 U.S.C. § 362(h) does not seek recovery of costs or punitive damages, and neither will be assessed in this proceeding.

**2.** Sovereign immunity was not raised as an affirmative defense and thus has not been ad-

dressed by the court in this proceeding. *See Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1984); *Satchell v. Dilworth*, 745 F.2d 781 (2d Cir.1984); *Santos v. Alaska Bar Ass'n*, 618 F.2d 575 (9th Cir.1980); 2A *Moore's Federal Practice* ¶ 8.27[4] (2d ed. 1989).

empted by §§ 362(b)(4) or (b)(5). Moreover, the court finds as facts that ESC's violation of the automatic stay was willful and that $250 is a reasonable amount for Mr. Peterkin to recover as attorney's fees incurred in bringing this action under § 362(h).

## DISCUSSION AND CONCLUSIONS

■ The automatic stay of 11 U.S.C. § 362(a), which comes into effect upon the filing of a bankruptcy petition, prohibits, among other things, the continuation of a judicial proceeding to recover from the debtor a claim that arose before the petition was filed, § 362(a)(1), as well as "any act to collect, assess, or recover" such a claim, § 362(a)(6). The stay is one of the fundamental debtor protections provided by bankruptcy law, allowing the debtor a breathing spell from his creditors and permitting him to attempt a repayment or reorganization plan. *See Budget Service Co. v. Better Homes of Virginia*, 804 F.2d 289 (4th Cir.1986). As the evidence makes clear, ESC violated the automatic stay by continuing its efforts to maintain civil contempt proceedings against Mr. Peterkin after the bankruptcy petition had been filed. On August 9, 1988, ESC persuaded the state court to enjoin Mr. Peterkin from hiring and continuing to employ individuals until his debt to ESC for past-due employment taxes was paid.[3] Enforcement of that order was suspended on the condition that Mr. Peterkin make monthly partial payments on the past-due debt and pay in full ensuing employment taxes as they became due. ESC's motion of March 23, 1988, initiating civil contempt proceedings based on Mr. Peterkin's failure to pay the court ordered sums was a part of ESC's continuing action to collect its debts. While it may be, as ESC argues, that civil

contempt proceedings would ultimately serve to protect the public health, safety, and welfare by providing funds for the unemployed and lessening economic insecurity, the underlying focus of these proceedings has been directed at Mr. Peterkin's financial obligations and, since the filing of the bankruptcy petition, have been barred by the automatic stay. *See In re Four Winds Enterprises, Inc,* 87 B.R. 624 (Bankr.S.D.Cal.1988); *In re Bean,* 66 B.R. 454 (Bankr.D.Colo.1986); *In re Sampson,* 17 B.R. 528 (Bankr.D.Conn.1982); *Matter of 1600 Pasadena Offices, Limited,* 64 B.R. 192 (Bankr.M.D.Fla.1986).

■ The court further finds that the violation in this case was willful. Section 362(h) of the Bankruptcy Code provides that "[a]n individual injured by a willful violation of the stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." It has been held that a violation of the automatic stay is willful when the creditor knows of the debtor's bankruptcy and intentionally engages in acts later found to violate the stay. *In re H & H Beverage Distributors, Inc.,* 79 B.R. 205 (E.D.Pa.1987); *In re Inslaw, Inc.,* 83 B.R. 89 (Bankr.D.D.C.1988). This court has also made clear, as counsel for ESC has acknowledged, that, once a creditor learns that a bankruptcy petition has been filed, the creditor has the burden "to correctly ascertain the scope of the automatic stay." *In re Outlaw,* 66 B.R. at 419, citing *In re Gibson,* 16 B.R. 682, 684 (Bankr.S.D.Ohio 1981); *In re Reed,* 11 B.R. 258, 274 (Bankr. D.Ohio 1981); and "[i]f the creditor is uncertain about the scope of the automatic stay, he takes the risk of being assessed for damages if he fails to obtain clarifica-

---

3. N.C.GEN.STAT. § 96–10(g) provides in pertinent part as follows:

Upon the motion of the Commission, any employer refusing to submit any report required under this Chapter, after 10 days' written notice sent by the Commission by registered or certified mail to the employer's last known address, may be enjoined by any court of competent jurisdiction from hiring and continuing in employment any employees until such report is properly submitted. When an execution has been returned to the Commission unsatisfied, and the employer, after 10 days' written notice sent by the Commission by registered mail to the employer's last known address, refuses to pay the contributions covered by the execution, such employer shall upon the motion of the Commission be enjoined by any court of competent jurisdiction from hiring and continuing in employment any employees until such contributions have been paid.

**54**

tion from the bankruptcy court." *In re Outlaw* at 419.

■ Having found that ESC's maintenance of civil contempt proceedings against Mr. Peterkin constitutes a willful violation of the automatic stay, the court must consider Mr. Peterkin's request for $720 in attorney's fees incurred in bringing this action. The language of § 362(h), "*shall recover actual damages, including costs and attorney's fees*" (emphasis added), indicates that attorney's fees are mandatory where there has been a willful violation of the automatic stay provision.

■ The court has considered the fact that, upon learning of Mr. Peterkin's bankruptcy petition, counsel for ESC moved for a continuance of the state court hearing and engaged in cooperative conversation with Mr. Peterkin's counsel regarding an appropriate means of eliciting instruction from this court. Nonetheless, instruction was not sought. Based on these circumstances the court will allow Mr. Peterkin attorney's fees of $250, which the court finds to be reasonable.

■ The automatic stay also requires ESC to do what is necessary to abate the state court proceedings. *In re Outlaw* at 419.

SO ORDERED.