HOFFMAN, TRUSTEE *v.* CONNECTICUT DEPART-
MENT OF INCOME MAINTENANCE ET AL.

No. 88–412.   Argued April 19, 1989—Decided June 23, 1989

WHITE, J., announced the judgment of the Court and delivered an opinion, in which REHNQUIST, C. J., and O'CONNOR and KENNEDY, JJ., joined. O'CONNOR, J., filed a concurring opinion, *post*, p. 105. SCALIA, J., filed an opinion concurring in the judgment, *post*, p. 105. MARSHALL, J., filed a dissenting opinion, in which BRENNAN, BLACKMUN, and STEVENS, JJ.,

joined, *post*, p. 106. STEVENS, J., filed a dissenting opinion, in which BLACKMUN, J., joined, *post*, p. 111.

*Martin W. Hoffman, pro se,* argued the cause and filed a brief for petitioner.

*Deputy Solicitor General Merrill* argued the cause for the United States. With him on the brief were *Acting Solicitor General Bryson, Assistant Attorney General Bolton,* and *Christopher J. Wright. Clarine Nardi Riddle,* Acting Attorney General of Connecticut, argued the cause for the state respondents. With her on the brief were *Kenneth A. Graham, Joan E. Pilver,* and *Carl J. Schuman,* Assistant Attorneys General.*

JUSTICE WHITE announced the judgment of the Court and delivered an opinion in which THE CHIEF JUSTICE, JUSTICE O'CONNOR, and JUSTICE KENNEDY join.

The issue presented by this case is whether § 106(c) of the Bankruptcy Code, 11 U. S. C. § 106(c), authorizes a bankruptcy court to issue a money judgment against a State that has not filed a proof of claim in the bankruptcy proceeding.

Petitioner Martin W. Hoffman is the bankruptcy trustee for Willington Convalescent Home, Inc. (Willington), and

---

*Michael E. Friedlander, Charles R. Work,* and *Seth D. Greenstein* filed a brief for Inslaw, Inc., as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the State of Arizona, by *Robert K. Corbin,* Attorney General, and *Anthony B. Ching,* Solicitor General; and for the State of Illinois et al. by *Neil F. Hartigan,* Attorney General of Illinois, *Robert J. Ruiz,* Solicitor General, and *James C. O'Connell* and *Barbara L. Greenspan,* Special Assistant Attorneys General, and by the Attorneys General for their respective States as follows: *Warren Price III* of Hawaii, *Linley E. Pearson* of Indiana, *William J. Guste, Jr.,* of Louisiana, *Frank J. Kelley* of Michigan, *Robert M. Spire* of Nebraska, *John P. Arnold* of New Hampshire, *Lacy H. Thornburg* of North Carolina, *Nicholas J. Spaeth* of North Dakota, *T. Travis Medlock* of South Carolina, *Charles W. Burson* of Tennessee, *James Mattox* of Texas, *R. Paul Van Dam* of Utah, *Jeffrey L. Amestoy* of Vermont, *Mary Sue Terry* of Virginia, *Charles G. Brown* of West Virginia, and *Donald J. Hanaway* of Wisconsin.

Edward Zera in two unrelated Chapter 7 proceedings. On behalf of Willington, he filed an adversarial proceeding in United States Bankruptcy Court—a "turnover" proceeding under 11 U. S. C. § 542(b)—against respondent Connecticut Department of Income Maintenance. Petitioner sought to recover $64,010.24 in payments owed to Willington for services it had rendered during March 1983 under its Medicaid contract with Connecticut. Willington closed in April 1983. At that time, it owed respondent $121,408 for past Medicaid overpayments that Willington had received, but respondent filed no proof of claim in the Chapter 7 proceeding.

Petitioner likewise filed an adversarial proceeding in United States Bankruptcy Court on behalf of Edward Zera against respondent Connecticut Department of Revenue Services. Zera owed the State of Connecticut unpaid taxes, penalties, and interest, and in the month prior to Zera's filing for bankruptcy the Revenue Department had issued a tax warrant resulting in a payment of $2,100.62. Petitioner sought to avoid the payment as a preference and recover the amount paid. See 11 U. S. C. § 547(b).

Respondents moved to dismiss both actions as barred by the Eleventh Amendment. In each case the Bankruptcy Court denied the motions to dismiss, reasoning that Congress in § 106(c) had abrogated the States' Eleventh Amendment immunity from actions under §§ 542(b) and 547(b) of the Bankruptcy Code and that Congress had authority to do so under the Bankruptcy Clause of the United States Constitution, Art. I, § 8, cl. 4. Respondents appealed to the United States District Court, and the United States intervened because of the challenge to the constitutionality of § 106. The District Court reversed without reaching the issue of congressional authority. 72 B. R. 1002 (Conn. 1987). The court held that § 106(c), when read with the other provisions of § 106, did not unequivocally abrogate Eleventh Amendment immunity.

The United States Court of Appeals for the Second Circuit affirmed the District Court. 850 F. 2d 50 (1988). The Court of Appeals concluded that the plain language of § 106(c) abrogates sovereign immunity "only to the extent necessary for the bankruptcy court to determine a state's rights in the debtor's estate." *Id.*, at 55. The section does not, according to the Court of Appeals, abrogate a State's Eleventh Amendment immunity from recovery of an avoided preferential transfer of money or from a turnover proceeding. The Court of Appeals specifically rejected petitioner's reliance on the legislative history of § 106(c) because that expression of congressional intent was not contained in the language of the statute as required by *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 242 (1985). Because the actions brought by petitioner were not within the scope of § 106(c), the court held that they were barred by the Eleventh Amendment.

The Second Circuit's decision conflicts with the decisions of the Third Circuit in *Vazquez* v. *Pennsylvania Dept. of Public Welfare*, 788 F. 2d 130, 133, cert. denied, 479 U. S. 936 (1986), and the Seventh Circuit in *McVey Trucking, Inc.* v. *Secretary of State of Illinois*, 812 F. 2d 311, 326–327, cert. denied, 484 U. S. 895 (1987). We granted certiorari to resolve the conflict, 488 U. S. 1003 (1989), and we now affirm.

Section 106 provides as follows:

"(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

"(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

"(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

"(1) a provision of this title that contains 'creditor,' 'entity,' or 'governmental unit' applies to governmental units; and

"(2) a determination by the court of an issue arising under such a provision binds governmental units." 11 U. S. C. § 106.

Neither § 106(a) nor § 106(b) provides a basis for petitioner's actions here, since respondents did not file a claim in either Chapter 7 proceeding. Instead, petitioner relies on § 106(c), which he asserts subjects "governmental units," which includes States, 11 U. S. C. § 101(26), to all provisions of the Bankruptcy Code containing any of the "trigger" words in § 106(c)(1). Both the turnover provision, § 542(b), and the preference provision, § 547(b), contain trigger words—"an entity" is required to pay to the trustee a debt that is the property of the estate, and a trustee can under appropriate circumstances avoid the transfer of property to "a creditor." Therefore, petitioner reasons, those provisions apply to respondents "notwithstanding any assertion of sovereign immunity," including Eleventh Amendment immunity.

We disagree. As we have repeatedly stated, to abrogate the States' Eleventh Amendment immunity from suit in federal court, which the parties do not dispute would otherwise bar these actions, Congress must make its intention "unmistakably clear in the language of the statute." *Atascadero State Hospital* v. *Scanlon, supra,* at 242; see also *Dellmuth* v. *Muth,* 491 U. S. 223, 227–228 (1989); *Welch* v. *Texas Dept. of Highways and Public Transp.,* 483 U. S. 468, 474 (1987) (plurality opinion). In our view, § 106(c) does not satisfy this standard.

Initially, the narrow scope of the waivers of sovereign immunity in §§ 106(a) and (b) makes it unlikely that Congress adopted in § 106(c) the broad abrogation of Eleventh Amendment immunity for which petitioner argues. The language of § 106(a) carefully limits the waiver of sovereign immunity

under that provision, requiring that the claim against the governmental unit arise out of the same transaction or occurrence as the governmental unit's claim. Subsection (b) likewise provides for a narrow waiver of sovereign immunity, with the amount of the offset limited to the value of the governmental unit's allowed claim. Under petitioner's interpretation of § 106(c), however, the only limit is the number of provisions of the Bankruptcy Code containing one of the trigger words. With this "limit," § 106(c) would apply in a scattershot fashion to over 100 Code provisions.

We believe that § 106(c)(2) operates as a further limitation on the applicability of § 106(c), narrowing the type of relief to which the section applies. Section 106(c)(2) is joined with subsection (c)(1) by the conjunction "and." It provides that a "determination" by the bankruptcy court of an "issue" "binds governmental units." This language differs significantly from the wording of §§ 106(a) and (b), both of which use the word "claim," defined in the Bankruptcy Code as including a "right to payment." See 11 U. S. C. § 101(4)(A). Nothing in § 106(c) provides a similar express authorization for monetary recovery from the States.

The language of § 106(c)(2) is more indicative of declaratory and injunctive relief than of monetary recovery. The clause echoes the wording of sections of the Code such as § 505, which provides that "the court may determine the amount or legality of any tax," 11 U. S. C. § 505(a)(1), a determination of an issue that obviously should bind the governmental unit but that does not require a monetary recovery from a State. We therefore construe § 106(c) as not authorizing monetary recovery from the States. Under this construction of § 106 (c), a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, see *Neavear* v. *Schweiker*, 674 F. 2d 1201, 1204 (CA7 1982); cf. *Gwilliam* v. *United States*, 519 F. 2d 407, 410 (CA9 1975), but would not be subjected to monetary recovery.

We are not persuaded by the suggestion of petitioner's *amicus* that the use of the word "determine" in the jurisdictional provision of the Code, 28 U. S. C. § 157(b)(1) (1982 ed., Supp. V), is to the contrary. Brief for INSLAW, Inc., as *Amicus Curiae* 10–11. That provision authorizes bankruptcy judges to determine "cases" and "proceedings," not issues, and provides that the judge may "enter appropriate orders and judgments," not merely bind the governmental unit by its determinations. Moreover, the construction we give to § 106(c) does not render irrelevant the language of the section that it applies "notwithstanding any assertion of sovereign immunity." The section applies to the Federal Government as well, see 11 U. S. C. § 101(26) (defining "governmental unit" as including the "United States"), and the language in § 106(c) waives the sovereign immunity of the Federal Government so that the Federal Government is bound by determinations of issues by the bankruptcy courts even when it did not appear and subject itself to the jurisdiction of such courts. See, *e. g.*, *Neavear, supra*, at 1204.

Petitioner contends that the language of the sections containing the trigger words supplies the necessary authorization for monetary recovery from the States. This interpretation, however, ignores entirely the limiting language of § 106(c)(2). Indeed, § 106(c), as interpreted by petitioner, would have exactly the same effect if subsection (c)(2) had been totally omitted. "It is our duty 'to give effect, if possible, to every clause and word of a statute,'" *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955) (quoting *Montclair* v. *Ramsdell*, 107 U. S. 147, 152 (1883)), and neither petitioner nor his *amicus* suggests any effect that their interpretation gives to subsection (c)(2).

Finally, petitioner's reliance on the legislative history of § 106(c) is also misplaced. He points in particular to floor statements to the effect that "section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit." See 124 Cong. Rec. 32394

(1978) (statement of Rep. Edwards); *id.*, at 33993 (statement of Sen. DeConcini). The Government suggests that these statements should be construed as referring only to cases in which the debtor retains a possessory or ownership interest in the property that the trustee seeks to recover, Brief for United States 20, and cites as an example this Court's decision in *United States* v. *Whiting Pools, Inc.*, 462 U. S. 198 (1983) (holding that the Internal Revenue Service could be required to turn over to bankrupt estate tangible property to which debtor retained ownership).

The weakness in petitioner's argument is more fundamental, however, as the Second Circuit properly recognized. As we observed in *Dellmuth* v. *Muth*, 491 U. S., at 230, "[l]egislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment." If congressional intent is unmistakably clear in the language of the statute, reliance on committee reports and floor statements will be unnecessary, and if it is not, *Atascadero* will not be satisfied. 491 U. S., at 228–229. Similarly, the attempts of petitioner and his *amicus* to construe § 106(c) in light of the policies underlying the Bankruptcy Code are unavailing. These arguments are not based in the text of the statute and so, too, are not helpful in determining whether the command of *Atascadero* is satisfied. See 491 U. S., at 230.

We hold that in enacting § 106(c) Congress did not abrogate the Eleventh Amendment immunity of the States. Therefore, petitioner's actions in United States Bankruptcy Court under §§ 542(b) and 547(b) of the Code are barred by the Eleventh Amendment. Since we hold that Congress did not abrogate Eleventh Amendment immunity by enacting § 106 (c), we need not address whether it had the authority to do so under its bankruptcy power. Cf. *Pennsylvania* v. *Union Gas Co.*, 491 U. S. 1 (1989). The judgment of the Second Circuit is affirmed.

*It is so ordered.*

JUSTICE O'CONNOR, concurring.

Although I agree with JUSTICE SCALIA that Congress may not abrogate the States' Eleventh Amendment immunity by enacting a statute under the Bankruptcy Clause, a majority of the Court addresses instead the question whether Congress expressed a clear intention to abrogate the States' Eleventh Amendment immunity. On the latter question, I agree with JUSTICE WHITE and join the plurality's opinion.

JUSTICE SCALIA, concurring in the judgment.

I concur in the Court's judgment that "petitioner's actions in United States Bankruptcy Court under §§ 542(b) and 547(b) of the [Bankruptcy] Code are barred by the Eleventh Amendment." *Ante,* at 104. I reach this conclusion, however, not on the plurality's basis that "Congress did not abrogate Eleventh Amendment immunity" of the States, *ibid.,* but on the ground that it had no power to do so. As I explained in my opinion concurring in part and dissenting in part in *Pennsylvania* v. *Union Gas Co.,* 491 U. S. 1, 35–42 (1989), it makes no sense to affirm the constitutional principle established by *Hans* v. *Louisiana,* 134 U. S. 1 (1890), that "'a suit directly against a State by one of its own citizens is not one to which the judicial power of the United States extends, unless the State itself consents to be sued,'" *Welch* v. *Texas Dept. of Highways and Public Transp.,* 483 U. S. 468, 486 (1987) (plurality opinion), quoting *Hans, supra,* at 21 (Harlan, J., concurring), and to hold at the same time that Congress can override this principle by statute in the exercise of its Article I powers. *Union Gas* involved Congress' powers under the Commerce Clause, but there is no basis for treating its powers under the Bankruptcy Clause any differently. Accordingly, I would affirm the judgment of the Court of Appeals without the necessity of considering whether Congress intended to exercise a power it did not possess.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN, JUSTICE BLACKMUN, and JUSTICE STEVENS join, dissenting.

In my view, the language of § 106(c) of the Bankruptcy Code (Code), 11 U. S. C. § 106(c), satisfies even the requirement that Congress' intent to abrogate the States' Eleventh Amendment immunity be "unmistakably clear." *Atascadero State Hospital* v. *Scanlon,* 473 U. S. 234, 242 (1985). Because Congress clearly expressed its intent to authorize a bankruptcy court to issue a money judgment against a State that has not filed a proof of claim in a bankruptcy proceeding, and because Congress has the authority under the Bankruptcy Clause to abrogate the States' Eleventh Amendment immunity, I respectfully dissent.

Section 106(c) states that, "notwithstanding *any* assertion of sovereign immunity," any Code provision containing one of the trigger words—"creditor," "entity," or "governmental unit"—applies to the States, and that "a determination by the court of an issue arising under such a provision binds [the States]" (emphasis added). The drafters of § 106(c) were fully aware of "the requirement in case law that an express waiver of sovereign immunity is required in order to be effective." 124 Cong. Rec. 32394 (1978) (statement of Rep. Edwards); *id.,* at 33993 (statement of Sen. DeConcini); see *Employees* v. *Missouri Dept. of Public Health and Welfare,* 411 U. S. 279, 285 (1973). They therefore carefully abrogated the States' sovereign immunity in three steps. First, they eliminated "any assertion of sovereign immunity." § 106(c). Second, they included States within the trigger words used elsewhere in the Code. § 106(c)(1). Third, they provided that States would be bound by the orders of the bankruptcy court. § 106(c)(2). What the plurality sees as redundancy in subsections (c)(1) and (c)(2) is thus more reasonably understood as evidence of the importance Congress attached to

ensuring that the abrogation of sovereign immunity was express.[1]

By its terms, § 106(c) makes no distinction between Code provisions that contain trigger words and permit only injunctive and declaratory relief, and Code provisions that contain trigger words and permit money judgments. Nevertheless, by placing heavy emphasis on the word "determination" in § 106(c)(2), the plurality concludes that § 106(c), in its entirety, is "more indicative of declaratory and injunctive relief than of monetary recovery." *Ante*, at 102. The plurality justifies this conclusion by accepting an analogy to the use of the word "determine" in a Code provision dealing with taxes, § 505(a)(1), while rejecting an equally compelling analogy to the use of the word "determine" in the Code's jurisdictional provision, 28 U. S. C. § 157(b)(1) (1982 ed., Supp. V). But instead of trying to force meaning into the word "determination" through competing analogies to other Code provisions, we should give decisive weight to the explicit language abrogating sovereign immunity.

The plurality correctly points out that the abrogation of sovereign immunity in § 106(c) should not be read to over-

[1] Not surprisingly, most courts considering § 106(c) have concluded that it clearly allows a trustee to recover preferences from a State and to require a State to turn over money belonging to the debtor. See, *e. g.*, *WJM, Inc.* v. *Massachusetts Dept. of Public Welfare*, 840 F. 2d 996, 1001 (CA1 1988); *McVey Trucking, Inc.* v. *Secretary of State of Illinois*, 812 F. 2d 311, 326–327 (CA7), cert. denied, 484 U. S. 895 (1987); *Neavear* v. *Schweiker*, 674 F. 2d 1201, 1202–1204 (CA7 1982); *Rhode Island Ambulance Services, Inc.* v. *Begin*, 92 B. R. 4, 6–7 (Bkrtcy. Ct., RI 1988); *Tew* v. *Arizona State Retirement System*, 78 B. R. 328, 329–331 (SD Fla. 1987); cf. *Gingold* v. *United States*, 80 B. R. 555, 561 (Bkrtcy. Ct., ND Ga. 1987); *R & L Refunds* v. *United States*, 45 B. R. 733, 735 (Bkrtcy. Ct., WD Ky. 1985); *Gower* v. *Farmers Home Administration*, 20 B. R. 519, 521–522 (Bkrtcy. Ct., MD Ga. 1982); *Remke, Inc.* v. *United States*, 5 B. R. 299, 300–302 (Bkrtcy. Ct., ED Mich. 1980). A leading bankruptcy commentator also reads § 106(c) to abrogate state sovereign immunity. 2 Collier on Bankruptcy ¶ 106.04 (15th ed. 1989).

whelm the narrow scope of the voluntary waiver set forth in §§ 106(a) and (b). But the plurality's conclusion that § 106(c) must therefore refer only to declarative and injunctive relief rests on the mistaken assumption that, without such a narrowing interpretation, "the *only* limit is the number of provisions in the Bankruptcy Code containing one of the trigger words." *Ante*, at 102 (emphasis added). The plurality then raises the specter that "§ 106(c) would apply in a scattershot fashion to over 100 Code provisions," *ibid.*, offering virtually endless opportunities for money judgments against the States.

Nothing could be further from the truth, for most of the Code provisions containing trigger words do not contemplate money judgments. Some provide States, in their role as creditors or entities, with rights against the debtor.[2] Others limit relief against "creditors," "entities," or "governmental units" to declaratory or injunctive relief.[3] Only a

---

[2] See, *e. g.*, § 303(b)(1) (permitting three or more "entities" to file an involuntary case against a debtor); § 303(c) (giving "creditors" who do not file an involuntary case the same rights as those who do); § 303(j) (requiring notice to all "creditors" before a court may dismiss an involuntary case); § 341(a) (requiring a meeting of "creditors"); § 343 (permitting "creditors" to examine the debtor); § 349(b)(3) (revesting property in an "entity" if the petition is dismissed); § 361 (setting forth adequate protection for certain property interests of an "entity"); § 363(c)(2)(A) (preventing use, lease, or sale of cash collateral assets absent consent of an interested "entity"); §§ 501 and 502 (regulating filing of proofs of claims by "creditors"); § 506(a) (granting secured status to lien "creditors"); § 553 (granting rights of setoff to certain "creditors"); §§ 702(a) and 705 (giving qualified "creditors" the right to vote for the trustee and the creditors' committee); §§ 507 and 726 (setting forth priorities of distribution to "creditors"); § 727(c) (giving a "creditor" the right to object to a discharge); § 1102 (providing for court appointed creditors' committee); § 1109(b) (giving a "creditor" the right to be heard on any issue); § 1121(c) (providing that a "creditor" may file a reorganization plan).

[3] See, *e. g.*, § 365 (permitting the trustee to assume or reject executory contracts and unexpired leases in certain circumstances); § 505 (permitting the bankruptcy court to determine the debtor's tax liability in certain circumstances); § 525 (protecting the debtor against government discrimina-

handful of the triggered sections clearly contemplate money judgments *against* a "creditor," "entity," or "governmental unit." These include the Code provisions at issue in this case, *i. e.*, the provision giving a trustee the power to avoid preferential payments made to "creditors," § 547, and the provision requiring "entities" to turn over property and money belonging to the debtor. § 542.[4] Thus, rather than reading § 106(c) in isolation as the plurality does, the provision should be read in light of the Code provisions containing the trigger words "creditor," "entity," and "governmental unit." Only in this way is it possible to appreciate the limited extent to which Congress sought to abrogate the States' sovereign immunity in § 106(c). See *Kelly* v. *Robinson*, 479 U. S. 36, 43 (1986) (Code should be read as an integrated whole).

By expressly including States within the terms "creditor" and "entity," Congress intended States generally to be treated the same as ordinary "creditors" and "entities," who are subject to money judgments in a relatively small number of Code provisions. The effect of today's decision is to exempt States from these provisions, which are crucial to the efficacy of the Code. The plurality therefore ignores Congress' careful choice of language and turns States into pre-

---

tion in licensing and employment); § 1141 (binding "creditors" to the terms of a confirmed reorganization plan and discharging all other claims); § 1142 (permitting the bankruptcy court to require performance of any act necessary to carry out a confirmed reorganization plan); § 1143 (preventing an "entity" that fails to perform a required act from participating in the distribution of estate assets).

[4] Several Code provisions that permit money judgments do not apply to States. For example, 11 U. S. C. § 362(h) (1982 ed., Supp. V) provides that an individual injured as a result of a willful violation of an automatic stay may recover actual damages and, where appropriate, punitive damages. Because § 362(h) contains no trigger words, it does not apply to States. See also *Prime, Inc.* v. *Illinois Dept. of Transp.*, 44 B. R. 924, 925–927 (Bkrtcy. Ct., WD Mo. 1984); *Gillman* v. *Board of Trustees of Alpine School Dist.*, 40 B. R. 781, 788–790 (Bkrtcy. Ct., Utah 1984).

ferred actors.[5]   By allowing a trustee to recapture payments
made to creditors 90 days before a bankruptcy petition is
filed, the preference provision prevents anxious creditors
from grabbing payments from an insolvent debtor and hence
getting more than their fair share.   After today, however,
any State owed money by a debtor with financial problems
will have a strong incentive to collect whatever it can, as fast
as it can, even if doing so pushes the debtor into bankruptcy.
Ordinary creditors will soon realize that States can receive
more than their fair share; the very existence of this govern-
mental power will cause these other creditors, in turn, to in-
crease pressure on the debtor.   See *McVey Trucking, Inc.*
v. *Secretary of State of Illinois*, 812 F. 2d 311, 328 (CA7),
cert. denied, 484 U. S. 895 (1987).[6]   The turnover provision
is designed to prevent third parties from keeping property of
the debtor or from refusing to make payments owed to the
debtor, thereby aiding the reorganization of the debtor's af-

---

[5] When Congress wanted to grant States special treatment, it specifi-
cally used the term "governmental unit."   See, *e. g.,* § 101(35) (1982 ed.,
Supp. V) (defining the term "person" so that it does not generally include a
"governmental unit"); § 346(f) (requiring the trustee to withhold State and
local taxes from claims based on wages or salaries); §§ 362(b)(4) and (5) (ex-
empting from the automatic stay provision actions of "governmental units"
to enforce police or regulatory powers); § 362(b)(9) (1982 ed., Supp. V) (ex-
empting from the automatic stay provision a "governmental unit's" issu-
ance of a notice of tax deficiency); § 507(a)(7) (1982 ed., Supp. V) (creating
relatively high priority for certain taxes owed to "governmental units");
§§ 523(a)(1) and (7) (exempting from discharge certain taxes and fines pay-
able to "governmental units"); § 523(a)(8) (exempting from discharge stu-
dent loans guaranteed by "governmental units"); § 1129(d) (barring bank-
ruptcy court from confirming a reorganization plan if the principal purpose
of the plan is the avoidance of taxes).

[6] The plurality's decision to exempt States from the preference provi-
sion is contrary to the understanding of the members of the Conference
Committee who presented § 106(c) to Congress.   See 124 Cong. Rec. 32394
(1978) (statement of Rep. Edwards) (§ 106(c) will cover situations in which
"a trustee or debtor in possession . . . assert[s] avoiding powers under title
11 against a governmental unit"); *id.,* at 33993 (statement of Sen. DeCon-
cini) (same).

fairs or the orderly and equitable distribution of the estate. See *United States* v. *Whiting Pools, Inc.*, 462 U. S. 198, 202–203 (1983). Exempting States from this provision, as well as from the preference provision, undermines these important policy goals of the Code.

My conclusion that Congress intended § 106(c) to abrogate the States' Eleventh Amendment immunity against money judgments requires me to decide whether Congress has the authority under the Bankruptcy Clause to do so.[7] In *Pennsylvania* v. *Union Gas Co.*, 491 U. S. 1, 19 (1989) (plurality opinion); *id.*, at 57 (WHITE, J., concurring in judgment), we held that Congress has the authority under the Commerce Clause to abrogate the States' Eleventh Amendment immunity. I see no reason to treat Congress' power under the Bankruptcy Clause any differently, for both constitutional provisions give Congress plenary power over national economic activity. See The Federalist No. 42, p. 271 (C. Rossiter ed. 1961) (J. Madison) (describing the Bankruptcy Clause and the Commerce Clause as "intimately connected"); cf., *ante*, at 105 (SCALIA, J., concurring in judgment).

For the reasons stated, I respectfully dissent.

JUSTICE STEVENS, with whom JUSTICE BLACKMUN joins, dissenting.

While I join JUSTICE MARSHALL's dissenting opinion, I think it is appropriate to explain why the legislative history of 11 U. S. C. § 106 lends added support to his reading of the statute.

The drafters of the Bankruptcy Code were well aware of the value to the bankruptcy administration process of a waiver of federal and state sovereign immunity. In 1973, five years before the Code was enacted, the Commission on the Bankruptcy Laws of the United States proposed a broad

---

[7] The Bankruptcy Clause provides: "Congress shall have Power To . . . establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U. S. Const., Art. I, § 8, cl. 4.

waiver of sovereign immunity under which every provision of the proposed bankruptcy bill would apply to the States. That provision was not enacted into law apparently because of concerns that Congress did not have the constitutional power to abrogate completely the States' sovereign immunity. See H. R. Rep. No. 95–595, p. 317 (1977); S. Rep. No. 95–989, p. 29 (1978). Instead, the initial legislation drafted by Congress limited the waiver of sovereign immunity to compulsory counterclaims and offsets, the provisions that now appear in §§ 106(a) and 106(b). Section 106(c), added after the bill that became the Bankruptcy Code was reported by the Senate and House Committees, restored to a large extent the power of the bankruptcy courts over States that had first been proposed in 1973. Whereas the waiver contained in the Commission on the Bankruptcy Laws' proposal would have subjected the States to suit under every provision of the Code, the application of § 106(c) was limited to those Code provisions containing the statutory trigger words. The House and Senate sponsors explained in floor statements:

"The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies in re Gwilliam, 519 F.2d 407 (9th Cir., 1975), and in re Dolard, 519 F.2d 282 (9th Cir., 1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. . . . [S]ubsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby over-

ruled." 124 Cong. Rec. 32394 (1978) (statement of Rep. Edwards); *id.*, at 33993 (statement of Sen. DeConcini).

The sponsors later added:

"Section 547(b)(2) of the House amendment adopts a provision contained in the House bill and rejects an alternative contained in the Senate amendment relating to the avoidance of a preferential transfer that is payment of a tax claim owing to a governmental unit. As provided, section 106(c) of the House amendment overrules contrary language in the House report with the result that the Government is subject to avoidance of preferential transfers." *Id.*, at 32400 (statement of Rep. Edwards); *id.*, at 34000 (statement of Sen. DeConcini).

Although the primary object of § 106(c) was to provide the bankruptcy court with authority to determine the amount and dischargeability of tax liabilities even if a claim has not been filed, the legislative history thus indicates that the provision was also intended to cover "other matters as well," including specifically the avoidance of preferential transfers. There was no suggestion that this authority did not include the power to order the return of real property and the payment of money damages or that the issues that the bankruptcy court could determine under § 106(c) were limited to whether prospective or declaratory relief was appropriate.

The fact that paragraph (c) was added to the bill after paragraphs (a) and (b) had been reported out of Committee also explains why those paragraphs were not rewritten to eliminate any possible redundancy in the section. Given this history it is apparent that the initial phrase in paragraph (c) ("[e]xcept as provided in subsections (a) and (b)") constituted a declaration that the new subsection provided an additional mechanism by which the bankruptcy courts could bind States and did not derogate from the power granted under the other two subsections.

There is no question that § 106(c) effects a waiver of sovereign immunity. The statute, which applies to the Federal Government, the States, and municipalities alike, see 11 U. S. C. § 101(21), states in the clearest possible terms that provisions of the Code using any of the trigger words apply to governmental units "notwithstanding any assertion of sovereign immunity," and the legislative history supports that reading. It is well settled that when the Federal Government waives its sovereign immunity, the scope of that waiver is construed liberally to effect its remedial purposes. See *Block* v. *Neal,* 460 U. S. 289, 298 (1983); *United States* v. *Yellow Cab Co.,* 340 U. S. 543, 554–555 (1951); *Larson* v. *Domestic & Foreign Commerce Corp.,* 337 U. S. 682, 709 (1949) (Frankfurter, J., dissenting); *Great Northern Life Ins. Co.* v. *Read,* 322 U. S. 47, 59 (1944) (Frankfurter, J., dissenting); see also *Finley* v. *United States,* 490 U. S. 545, 578–580 (1989) (STEVENS, J., dissenting). The same rule should be applied under this section when the defendant is a State, rather than the Federal Government or a municipality. Cf. *Missouri* v. *Jenkins,* 491 U. S. 274, 281–282 (1989) (whether Congress intended an enhancement of a reasonable attorney's fee under § 1988 should not turn on whether the party against whom fee is awarded is a State). I would therefore hold that the determinations that a bankruptcy court may make under § 106(c) include a determination that a State must pay money damages under a Code provision containing one of the trigger words.