**In re Robert J. EVERETT, Amy V. Everett, Debtors.**

**Bankruptcy No. 90–03949–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

June 7, 1991.

Bruce Allen, Fayetteville, N.C., for Debtors.

Rudolph A. Renfer, Jr., Asst. U.S. Atty., Chief, Civil Div., Raleigh, N.C., for U.S. Postal Service.

### ORDER ALLOWING DAMAGES FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the debtors' request for damages pursuant to 11 U.S.C. § 362(h) arising from a willful violation of the § 362(a) automatic stay by the U.S. Postal Service.[1] A hearing was held in Raleigh, North Carolina, on May 2, 1991.

The facts are quite simple. Robert J. Everett and Amy V. Everett filed a joint petition for relief under chapter 7 of the

---

**1.** The debtors' motion was filed on January 23, 1991, and is entitled "Motion to Enforce Stay." A hearing was initially scheduled for April 2, 1991, at which the parties agreed that the motion should be considered to be a request for relief pursuant to § 362(h). *See*, the court's Order to Reschedule Hearing filed on April 5, 1991.

Bankruptcy Code on November 23, 1990. Mr. Everett is an employee of the U.S. Postal Service in Fayetteville, North Carolina. Prior to his bankruptcy, the Postal Service demanded that he repay $7,000 which the Postal Service claimed was missing from his cash drawer. Mr. Everett denied responsibility for the loss, but agreed to make payments through payroll deductions.

The debtors listed the obligation to the Postal Service as a $6,808.11 unsecured claim on their Schedule A–3. Notice of the bankruptcy was sent to the Postal Service at an address in Minneapolis. Although Mr. Everett worked at a post office in Fayetteville, the Minneapolis address was used, because it was the address that had appeared on an invoice and statement sent to the debtor by the Postal Service in connection with his payroll deductions. Notwithstanding the bankruptcy notice, the Postal Service continued to make deductions postpetition from Mr. Everett's paychecks. These deductions totalled $799.54. The deductions stopped in February, but the postpetition payments have not been refunded.

Initially, the Postal Service contended that the notice it received in Minneapolis was sent to the wrong address. That defense, however, has been abandoned and the Postal Service relies on the defense of sovereign immunity.

■ The debtors contend that sovereign immunity has been waived pursuant to 11 U.S.C. § 106. Section 106 provides that sovereign immunity is waived in three circumstances. The first two waivers (§§ 106(a) and (b)) relate to situations in which the governmental entity has made a claim against the bankruptcy estate. The Everetts' case, however, is a no-asset case and no proof of claim has been filed by the Postal Service.

The third waiver provided in § 106 is not dependent upon a claim being made by the sovereign. Section 106(c) provides that:

[e]xcept as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

There are several reasons why § 106(c) may not preclude the defense of sovereign immunity in this case. First, the applicable provision must contain one of the "magic words"—"creditor," "entity," or "governmental unit." Section 362(h) states that:

[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

None of the "magic words" are present in § 362(h). The word "entity," however, does appear in § 362(a). Clearly, all governmental units are bound by the automatic stay of § 362(a). The term "entity" as defined in 11 U.S.C. § 101(14) includes a "governmental unit." Since "governmental unit" includes a "department, agency, or instrumentality of the United States," § 101(26), the U.S. Postal Service clearly is a "governmental unit."

It may be argued that although a "governmental unit" is subject to the § 362(a) stay, the government is protected by sovereign immunity from liability under § 362(h) arising as a result of the government's willful breaches of the stay. This governmental protection would produce an incongruous result. If a governmental unit is subject to the automatic stay, it must also be held accountable for violating the stay; otherwise, the stay would be meaningless. Justice Scalia, writing the majority opinion in *United Savings Ass'n. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), observed that statutory construction is a "holistic endeavor." *Timbers*, 108 S.Ct. at 630. If the words of the entire Code are to be read holistically, certainly subsections of the same Code section should be read together to further that section's unmistakable purpose. This court concludes that

the inclusion of the word "entity" in § 362(a) makes the waiver of sovereign immunity in § 106(c) applicable to *all* subsections of § 362, including § 362(h).

A second argument against a waiver of sovereign immunity in this case is that the scope of the waiver in § 106(c) is limited. The Postal Service argues that the waiver is not broad enough to subject the government to a monetary judgment. In support of that position, the Postal Service cites the Supreme Court's decision in *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). In that case, the Supreme Court considered whether the § 106(c) waiver of sovereign immunity was broad enough to permit a trustee to recover a monetary judgment in a preferential transfer (§ 547) or in a turnover proceeding (§ 542) against a *state* governmental unit. Four justices (Justice White, Chief Justice Rehnquist, Justice O'Connor, and Justice Kennedy) were of the opinion that Congress in enacting § 106(c) did not intend to abrogate the state's protection from monetary judgments under the Eleventh Amendment to the Constitution. Four justices were of the opinion that that is precisely what Congress had done. The deciding vote was that of Justice Scalia who did not express an opinion as to Congress's intention because, in his view, Congress had no authority whatsoever to dispense with the state's Eleventh Amendment sovereign immunity right.

In the present case, the Eleventh Amendment is not at issue since it is the federal government's and not a state's sovereign immunity right that is being invoked. Consequently, since the Supreme Court justices who expressed opinions on the scope of the § 106(c) waiver are equally divided, 4 to 4, the *Hoffman* case is not controlling as to the scope of the § 106(c) waiver of *federal* sovereign immunity.

In *Hoffman* the plurality stated that the waiver language of § 106(c)(2) is "more indicative of declaratory and injunctive relief than of monetary recovery." *Hoffman* 109 S.Ct. at 2823. If § 106(c) permits the court to allow injunctive relief against a governmental unit, it follows that the court may issue orders to enforce the injunctive relief granted. The automatic stay of § 362(a) is injunctive relief granted in favor of the debtor and the debtor's estate. Awarding damages under § 362(h) for the willful violations of the stay is a part of the enforcement of the injunctive relief under § 362(a) which clearly applies to all entities, including governmental units.

The court is aware that the Ninth Circuit Court of Appeals has held that the United States is immune from suit for money damages for violating the automatic stay. *In re Pearson*, 917 F.2d 1215 (9th Cir.1990). The court in that case found that the plurality's reasoning in *Hoffman* regarding the sovereign immunity of states from a monetary judgment was equally applicable to the United States. The court cited a footnote in the dissenting opinion in *Hoffman* which observed that § 362(h) did not contain one of the three "magic words" found in § 106(c). Based on that footnote, the Ninth Circuit predicted that one or more of the dissenting justices who had concluded that Congress did purport to waive the government's immunity from suits for money judgments would join the plurality to "hold that governmental units are immune to damages actions arising from violations of the automatic stay." *Pearson* at 1216.

The Eighth Circuit also addressed the issue of sovereign immunity of the United States from money judgments under § 362(h) in *Small Business Administration v. Rinehart*, 887 F.2d 165 (8th Cir. 1989). In that case, the lower court had awarded compensatory and punitive damages against the Small Business Administration for violating the automatic stay. The SBA had agreed to be responsible for compensatory damages, and that was not an issue before the appellate court. The appellate court, however, did set aside the punitive damages based on *Hoffman*. The Eighth Circuit held that "[b]ecause the [Supreme] Court has interpreted section 106(c) so as not to waive the government's sovereign immunity with respect to monetary awards, we have no alternative but to reverse the district court's punitive damages

award in this case." *Rinehart* at 170. *See, also, U.S. v. McPeck*, 910 F.2d 509, 512 (8th Cir.1990), a case involving waivers under § 106(a) and (b), but reiterating the court's holding in *Rinehart* with respect to § 106(c).

The Sixth Circuit addressed the waiver of sovereign immunity of the United States under § 106(c) in *In re Nordic Village, Inc.*, 915 F.2d 1049 (6th Cir.1990, *petition for cert. filed*, U.S.Sup.Ct., No. 90–1629, April 23, 1991). The *Nordic* issue involved the avoidance of a postpetition transfer pursuant to 11 U.S.C. §§ 549 and 550 received by the Internal Revenue Service. The Sixth Circuit panel by a 2–1 majority found that *Hoffman*, which dealt the waiver of the state's sovereign immunity, is not precedent when the issue is the sovereign immunity of the United States. The court held that § 106(c) waived the defense of sovereign immunity, which the IRS had raised, and that a monetary judgment could be entered. The Sixth Circuit's analysis is both thorough and persuasive.

Based on the foregoing, it is this court's opinion that sovereign immunity does not protect the United States from the assessment of monetary damages under § 362(h) for the government's willful violation of the § 362(a) stay.

■ The Postal Service does not deny that it had notice of the debtors' bankruptcy, or that after receiving the notice that it withheld postpetition payments of $799.54 from Mr. Everett's wages. The court finds that the Postal Service's actions constitute a willful violation of the automatic stay.

Mr. Everett's compensatory damages arising from the stay include the $799.54 withheld plus his reasonable attorney fees of $500.00. Mr. Everett also has requested punitive damages.

The court has considered the imposition of punitive damages for stay violations on several occasions. In *In re Armstrong*, 96 B.R. 55 (Bankr.E.D.N.C.1989), American Airlines continued to withhold funds from a chapter 13 debtor's wages after receiving notice of the bankruptcy. The court in that case imposed punitive damages of $2,283.84, the amount of the wages with-

held. Punitive damages in the amount of the funds withheld would also be appropriate in this case.

Accordingly, the U.S. Postal Service is ordered to pay to Mr. Everett compensatory damages of $799.54, attorney fees of $500.00, and punitive damages of $799.54. These sums shall be paid within 15 days of this order.

SO ORDERED.