**In re Wayne JOHNSTON and
Nadara JOHNSTON.**

**Wayne and Nadara JOHNSTON,
Plaintiffs,**

**v.**

**COMMODITY CREDIT CORPORATION,
Defendant.**

**Bankruptcy No. E82–30026.
Adv. No. 90–2217.**

United States Bankruptcy Court,
N.D. Mississippi.

June 26, 1992.

Doris C. Landon, Oxford, MS, for Wayne Johnston and Nadara Johnston.

Patricia D. Rogers, Asst. U.S. Atty., Oxford, MS, for Commodity Credit Corp.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion to amend the complaint and request for a jury trial filed by the plaintiffs, Wayne and Nadara Johnston; response having been filed by the defendant, Commodity Credit Corporation; and the court having considered same, hereby finds as follows, to-wit:

### I.

The court has jurisdiction of the subject matter of and the parties to this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(*O*).

### II.

In the pretrial order filed with the court, the parties stipulated to the following pertinent facts:

1. Plaintiff filed for relief under Chapter 11 of the U.S. Bankruptcy Code on February 17, 1982. An order of confirmation was entered on August 10, 1983, by Judge T. Glover Roberts.

2. The Confirmation Order entered on August 10, 1983, stated that "until entry of the Final Decree, the automatic stay of § 362, Title II, United States Code, remains in full force and effect ..."

3. The confirmed plan as amended by order dated August 8, 1983, provided the following:

Commodity Credit Corporation having filed Objections to the Confirmation of the Debtors' Plan of Reorganization on April 28, 1983, and Commodity Credit Corporation being the only Creditor of the Debtors to so file a written objection to the Plan, and hearing pursuant to the objection of Commodity Credit Corporation having been set by the Court for July 29, 1983. The hearing was held in Oxford, Mississippi, on July 29, 1983, with Debtors and their attorney of record, Jackie Tatum, present and with Commodity Credit Corporation being represented at the hearing by the Assistant United States Attorney, Falton O. Mason, Jr.

It appears to the satisfaction of the Court that the Debtors and the Creditor, Commodity Credit Corporation, have reached an agreement that the

Creditor will withdraw its objections to the Plan and that the debtors shall amend the Plan of Reorganization as follows:

That Article III. B. Specific Treatment of Claims. 6. *Class 6.* be amended to read as follows:

The only creditor in this Class is Commodity Credit Corporation, A.S.C.S., which is owed approximately $28,976.00 secured by chattel mortgage on approximately 2,496 bushels of soybeans and two (2) grain bins. That the creditor will retain its lien on the grain bins; that the soybeans will be sold within a reasonable time after Plan Confirmation, and that application of the proceeds of the sale of the beans will be applied as follows: Immediate payment of claims in classes 1, 2, and 10 in full; payment immediately of one-third ($\frac{1}{3}$) of proceeds of sale of beans or $5,000.00, whichever is less, to Commodity Credit Corporation to be applied to the indebtedness. Within ten days of Confirmation of Plan, payment to John Deere of $700.00 as described in Class 5. above and within thirty (30) days of Confirmation of Plan, payment to Peoples Bank of Note # 02909 as aforedescribed in Class 4.

The Creditor, Commodity Credit Corporation, will retain its lien on the total amount of $28,976.00 plus interest at 10% from the date February 17, 1982, less any proceeds from the sale of the beans applied thereto.

After application of the one-third ($\frac{1}{3}$) of the bean proceeds or $5,000.00, whichever is less, to the indebtedness, the remaining indebtedness shall be amortized at 10% over a ten-year period from the date of Plan Confirmation, with annual payback over a five-year period, the first four payments being equal and the last payment being a balloon payment equivalent to the remaining principal and all accrued interest to date of fifth payment. The first payment will be payable on the first anniversary date of the Confirmation of Plan and the subsequent payments will be due on the same day each succeeding year as aforedescribed.

Upon Confirmation of Plan, the Debtors shall execute a Deed of Trust to Commodity Credit Corporation, giving them a mortgage, second to FmHA, on approximately five (5) acres, more or less of real property located and situated in Section 34, Township 4 of Range 3 East of Tippah County, Mississippi, and being all that property lying north of the public road known as Booker and Ratliff Public Road, being a portion only of that property described in Deed Book 103 at 567, Tippah County Land Records.

That the Deed of Trust executed by the Debtors to Commodity Credit Corporation shall serve as a replacement lien for the soybeans sold and shall be the indubitable equivalent thereof.

4. A Motion to Clarify Court's Order of August 8, 1983 was made by Commodity Credit Corporation on September 20, 1985.

5. Neither attorney for the debtor, nor attorney for the creditor were attorneys of record when the confirmation order was entered. Neither attorney was consciously aware until May 29, 1990 of that portion of the confirmation order which provided that the automatic stay would remain in effect until entry of the final decree.

6. A deed of trust was signed on August 31, 1983, for $23,976.00 with interest to accrue at 10% per annum from August 20, 1983. The deed of trust was recorded on August 21, 1986.

7. The deed of trust stated "In trust for the following purposes: as a substitute lien for the soybeans sold and the indubitable equivalent thereof"

8. A promissory note was executed on December 5, 1985 for $23,976.00 with interest to accrue from August 23, 1983.

9. On August 21, 1984 and on August 20, 1985, debtors made the first and second payments in the amount of $3,901.98 each as provided for by the promissory note.

10. On October 2, 1987, $2,600.57 in 1986 final corn deficiency payments were setoff and applied to the outstanding principal and accrued interest on the note.

11. On February 2, 1990, $5,131.00 in 1989 soybean disaster payments were setoff and applied to the outstanding principal and accrued interest on the note.

12. On March 23, 1990, $438.00 in 1989 final corn deficiency payments were setoff and applied to the outstanding principal and accrued interest on the note.

13. On May 8, 1990, $264.00 in 1989 soybean disaster payments were setoff and applied to the outstanding principal and accrued interest on the note.

14. The following CCC payments were not offset, but were paid to the debtor.

> 1984—$1,662.97
>
> 1986—$3,155.10

15. The total amount offset by CCC was $8,433.57.

16. The amount owed to CCC under the note by the debtor as of 2/24/92 is $30,374.04 with interest continuing to accrue at the rate of 10% per annum.

### III.

The plaintiffs allege in their complaint that the setoffs of the deficiency and disaster payments by Commodity Credit Corporation violated the automatic stay found in 11 U.S.C. § 362(a). They contend that because of the setoffs they could not continue their farming operations and became unable to pay Commodity Credit Corporation pursuant to their confirmed plan of reorganization. They have demanded the return of the monies withheld plus interest, costs, attorney's fees, and punitive damages.

The plaintiffs recently filed a motion seeking to amend the complaint to demand additional damages for personal injuries to Nadara Johnston allegedly caused by the setoffs. In this motion they requested a jury trial for the first time.

(Hereinafter, all Code sections will be considered as Title 11, U.S. Code, unless specifically noted otherwise.)

### IV.

Section 362(c) specifies the time of effectiveness of the automatic stay in a bankruptcy case as to actions against property of the estate and other actions against the debtor, to-wit:

(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

When a Chapter 11 plan is confirmed, several significant things occur. First, pursuant to § 1141(b), all property of the bankruptcy estate vests in the debtor. This essentially means that there is no longer a bankruptcy estate. Second, pursuant to § 1141(d), the debtor receives a discharge. The occurrence of these two events effectively eliminates the automatic stay in keeping with the aforesaid provisions of § 362(c).

But for the language in the confirmation order entered in this case, i.e., "until entry of the Final Decree, the automatic stay of § 362, Title 11, United States Code, remains in full force and effect," there would have been no automatic stay in effect at any of the times when Commodity Credit Corporation setoff the deficiency and disaster payments. Retaining the effectiveness of the automatic stay in a confirmation order is certainly not commonplace. Had this language been omitted, the plaintiffs

would have no cause of action whatsoever against Commodity Credit Corporation.

## V.

Commodity Credit Corporation, in responding to the motion to amend and request for a jury trial, for the first time raised the issue of sovereign immunity. Commodity Credit Corporation, an entity affiliated with the United States Department of Agriculture, would be entitled to invoke the defense of sovereign immunity as an agency of the federal government unless it has been waived. In adopting the Bankruptcy Code, Congress provided a limited waiver of immunity in § 106 which reads as follows:

(a) A government unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

■ The parties have indicated in their memoranda that perhaps immunity has been waived in this proceeding pursuant to either § 106(a) or § 106(b). However, they have overlooked one significant factor which was discussed earlier. Both § 106(a) and § 106(b) provide that the claim against the governmental unit must be property of the estate. Since the plaintiffs' Chapter 11 plan was confirmed, there is no longer a bankruptcy estate and, as such, there is no longer any "property of the estate." Even so, under the present factual scenario, the alleged claims of the plaintiffs against Commodity Credit Corporation were never property of the estate because they arose long after the estate ceased to exist. The conclusion, therefore, becomes inescapable that § 106(a) and § 106(b) are inapplicable. The retention of the effectiveness of the automatic stay in the confirmation order cannot preserve the bankruptcy estate.

The court next looks to § 106(c), which is also a waiver of immunity, but as considered in *United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), a very narrow waiver. There, Justice Scalia, writing for the majority, discussed the court's previous decision examining § 106, *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), which held that § 106(c) does not permit a bankruptcy court to award monetary damages against a state.

In *Nordic Village*, the court observed, that for immunity purposes, state and federal sovereigns are to be treated the same. Noted as the primary reason for this conclusion was the definition of "governmental unit" found in § 101(27).

In construing § 106(c), Justice Scalia commented as follows:

Under one interpretation, § 106(c) permits the bankruptcy court to issue "declaratory and injunctive"—though not monetary—relief against the Government. *Hoffman*, 492 U.S., at 102, 106 L.Ed.2d 76, 109 S.Ct. 2818. This conclusion is reached by reading the two paragraphs of subsection (c) as complementary rather than independent: the first paragraph identifies the subject matter of disputes that courts may entertain under the subsection and the second paragraph describes the relief that courts may grant in such disputes. That is to say, the second paragraph specifies the *manner* in which there shall be applied to governmental units the provisions identified by the first paragraph, i.e., a manner that permits declaratory or injunctive relief but not an affirmative monetary recovery.

Several factors favor this construction. The distinction it establishes—between suits for monetary claims and suits for other relief—is a familiar one, and is suggested by the contrasting language used in subsections (a) and (b) ("claim[s]") and in subsection (c) ("determination[s]" of "issue[s]"), *Hoffman*, 492 U.S., at 102, 106 L.Ed.2d 76, 109 S.Ct. 2818. It also avoids eclipsing the carefully drawn limitations placed on the waivers in subsections (a) and (b). The principal provision of the Code permitting the assertion of claims against persons other than the estate itself is § 542(b), which provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee," 11 U.S.C. § 542(b). If the first paragraph of § 106(c) means that, by reason of use of the trigger-word "entity," this provision applies *in all respects* to governmental units, then the Government may be sued on all alleged debts, despite the prior specification in subsections (a) and (b) that claims against the Government will lie only when the Government has filed a proof of claim, and even then only as a setoff unless the claim is a compulsory counterclaim. Those earlier limitations are reduced to trivial application if paragraph (c)(1) stands on its own. See *Hoffman, supra,* at 101–102, 106 L.Ed.2d 76, 109 S.Ct. 2818. This construction also attaches practical consequences to paragraph (c)(2), whereas respondent's interpretation violates the settled rule that a statute must, if possible, be construed in such fashion that every word has some operative effect. See *Hoffman, supra,* at 103, 106 L.Ed.2d 76, 109 S.Ct. 2818; *United States v. Menasche*, 348 U.S. 528, 538–539, 99 L.Ed. 615, 75 S.Ct. 513 [519–520] (1955). Respondent has suggested no function to be performed by paragraph (2) if paragraph (1) operates to treat the Government like any other "entity" or "creditor," regardless of the type of relief authorized by an applicable Code provision.

Under this interpretation, § 106(c), though not authorizing claims for monetary relief, would nevertheless perform a significant function. It would permit a bankruptcy court to determine the amount and dischargeability of an estate's liability to the Government, such as unpaid federal taxes, see 11 U.S.C. § 505(a)(1) (permitting the court to "*determine* the amount or legality of any tax") (emphases added), whether or not the Government filed a proof of claim. See 492 U.S., at 102–103, 106 L.Ed.2d 76, 109 S.Ct. 2818. Cf. *Neavear v. Schweiker*, 674 F.2d 1201, 1203–1204 (CA7 1982) (holding that under § 106(c) a bankruptcy court could discharge a debt owed to the Social Security Administration). The Government had repeatedly objected, on grounds of sovereign immunity, to being bound by such determinations before § 106(c) was enacted in 1978. See, e.g. *McKenzie v. United States*, 536 F.2d 726, 728–729 (CA7 1976); *Bostwick v. United States*, 521 F.2d 741, 742–744 (CA8 1975); *Gwilliam v. United States*, 519 F.2d 407, 410 (CA9 1975); *In re Durensky*, 377 F.Supp. 798, 799–800 (ND Tex.1974), appeal dism'd, 519 F.2d 1024 (CA5 1975).

Subsection (c) is also susceptible of another construction that would not permit recovery here. If the two paragraphs of § 106(c) are read as being independent, rather than the second as limiting the first, then, pursuant to the first paragraph, Code provisions using the triggering words enumerated in paragraph (c)(1) would apply fully to governmental units. But that application of those provisions would be limited by the requirements of subsections (a) and (b), in accordance with the phrase that introduces subsection (c) ("Except as provided in subsections (a) and (b) of this section"). This exception, in other words, could be read to mean that the rules established in subsections (a) and (b) for waiver of Government "claim[s]" that are "property of the estate" are exclusive, and preclude any resort to subsection (c) for that purpose. That reading would bar the present suit, since the

right to recover a post-petition transfer under § 550 is clearly a "claim" (defined in § 101(4)(A)) and is "property of the estate" (defined in § 541(a)(3)). (The dissent appears to read paragraphs (c)(1) and (c)(2) as being independent but provides no explanation of what the textual exception could mean under that reading.)

The foregoing are assuredly not the only readings of subsection (c), but they are plausible ones—which is enough to establish that a reading imposing monetary liability on the Government is not "unambiguous" and therefore should not be adopted. Contrary to respondent's suggestion, legislative history has no bearing on the ambiguity point. As in the Eleventh Amendment context, see *Hoffman,* 492 U.S., at 104, 106 L.Ed.2d 76, 109 S.Ct. 2818, the "unequivocal expression" of elimination of sovereign immunity that we insist upon is an expression in statutory text. If clarity does not exist there, it cannot be supplied by a committee report. Cf. *Dellmuth v. Muth,* 491 U.S. 223, 228–229, 105 L.Ed.2d 181, 109 S.Ct. 2397 [2400–2401] (1989).

The holding of *Nordic Village,* is clear. Section 106(c) does provide a waiver of sovereign immunity, but that waiver is not so broad as to permit an award of monetary damages against a governmental unit in a bankruptcy adversary proceeding. The waiver is limited to declaratory and injunctive relief, i.e., the determination of issues. As such, the plaintiffs' claims for damages against Commodity Credit Corporation, for personal injuries or otherwise, cannot be permitted. The motion to amend the complaint has become meaningless, so, therefore, it will be denied. Because of this conclusion, the request for the jury trial is considered untimely and will also be denied. *See,* Rule 38(b), Fed.Rules Civ. Proc.

### VI.

In summary, the court finds that § 106(a) and § 106(b) are inapplicable to this proceeding. Section 106(c) is applicable, but not to the extent that monetary damages can be awarded against Commodity Credit Corporation. The court is of the opinion that if there are no issues to be determined that this proceeding should be dismissed without prejudice. However, at this time, there is no pleading before the court to accomplish this result.

An order will be entered overruling the motion to amend and denying the request for the jury trial.